## DIEFENDERFER ET AL. v. STATE EX REL. FIRST NATIONAL BANK OF CHICAGO, ILL., ET AL.

MUNICIPAL BONDS—APPEAL AND ERROR—DISMISSAL—MUNICIPAL ORDINANCE—JUDGMENT—CHANGED CONDITIONS—COSTS.

1. Where, after judgment in mandamus against a town and its officers requiring the issuance and delivery of town bonds to relator in accordance with a contract between the relator and the town, the town council adopted a resolution affirming the contract with relator, and directing the proper town officers to execute and deliver the bonds as

required by the judgment;   *Held,* that, as the defenses interposed in the suit were based solely on the proposition that no duty or obligation rested upon the town toward the relator in respect to the bonds, the resolution of the council to abide the judgment, and directing the execution of the bonds in accordance therewith, withdrew from further controversy, as against all the defendants, every issue in the case, so that the judgment was not reviewable in a proceeding in error brought solely by the mayor, clerk and a single member of the council, in their own behalf; the issue of the bonds not being illegal.

2. Under the constitutional provision requiring bonds of a county, or other political subdivision, to be valid, to have endorsed thereon a certificate that they are issued pursuant to law and are within the debt limit, to be signed by the county auditor, or other officer authorized by law to sign the same, a town ordinance requiring the mayor to sign such certificate upon certain town bonds about to be issued was a "law" within the meaning of such constitutional provision; there being no such officer as county auditor, and the legislature having authorized any town to issue bonds of the character of those in question, under certain prescribed regulations, and provided that the mayor and·council of any town desiring to issue such bonds "shall provide by ordinance therefor," and there being at the time of the passage of the town ordinance, no act of the legislature prescribing who should sign the certificate of legality thereon.

3. Whether a judgment challenged on error is erroneous or not is to be determined upon the facts disclosed by the record, and as they existed at the time of the rendition of the judgment, nevertheless an appellate court may, in the interest of justice, for various purposes, take notice of matter occurring since the judgment, and the judgment, though free from error, considered in relation to the facts as they then existed, may even be· vacated, and the cause remanded for proper proceedings, on account solely of something that transpired after it was rendered.

4. Where, in a mandamus suit to compel the issuance and delivery of certain refunding bonds of an incorporated town to the relator, judgment was rendered against the town and its officers requiring the issuance and delivery of the bonds as of a certain date subsequent to the judgment, upon payment of the purchase price, and, by reason of

proceedings in error brought solely by the Mayor, Clerk, and one member of the Town Council, in their own behalf, delays had occurred in the issuance of the bonds until the terms of office of the Mayor and Clerk, against whom the judgment was rendered, had expired, and others had succeeded them in such offices respectively, so that a doubt had arisen as to the authority of either the old or new officers to sign the bonds as of the date provided in the judgment; and the relator had obtained possession of all the outstanding bonds, and had proposed to surrender them to the town in exchange for the new bonds; *Held,* that, though the proceeding in error might be dismissed because every issue in the case at the time of the judgment had been withdrawn from controversy, in consequence of the adoption of a resolution by the Town Council to abide the judgment, and requiring the execution and delivery of the bonds, the judgment would be modified to conform to the new conditions arising since the judgment in respect to the date of the bonds, and requiring the new bonds to be delivered to the relator in exchange for the old bonds, and the certificate of legality to be signed by both the Mayor and Clerk to comply with the ordinance and judgment and a later act of the Legislature.

5. Where, on a proceeding in error, the judgment is modified, not as the result of error therein, but on account of changed conditions since the judgment, and of delay caused by the appeal improperly taken, the case stands, in respect to costs, as though the judgment had been affirmed, and the costs are taxable against the plaintiffs in error.

[Decided January 6, 1906.]                    (83 Pac. 591.)

ERROR to the District Court, Sheridan County, HON. JOSEPH L. STOTTS, Judge.

On rehearing. For former opinion and report, see 13. Wyo., 387 (80 Pac., 667).

*E. E. Enterline, W. E. Mullen* and *J. F. Hoop,* for plaintiffs in error, on petition for rehearing.

The resolution of the Town Council adopted in November, 1904, did not provide specifically for a notice calling in the outstanding bonds, as seems to be supposed by the

court in the opinion heretofore delivered. It merely stated that notice should be given according to ordinance, and no ordinance existed regulating the matter. The purchase price of the bonds was not in fact deposited by the relator in the New York Bank to the credit of the town, but to the relator's own credit and for its own purposes. It took up the bonds not for the town, but for itself.

The November resolution of the Council was not binding upon the town officers. Notice of the proposed redemption of the outstanding bonds could not be provided for by resolution. That must be done by ordinance. (Rev. Stat. 1899, Secs. 1723-1724.) Where the statute uses the term "ordinance" in directing the method by which municipal powers may be exercised, it is to be construed in its legal signification; and a resolution is not sufficient where the act is required to be done by an ordinance. (Horr & Bemis, Mun. Pol. Ordinances, Sec. 210; Patterson v. Barnet, 46 N. J., 62; Cross v. Morristown, 18 N. J. Eq., 305; Nashville v. Toney, 10 B. J. Lea, 643; Bryan v. Page, 51 Tex., 532; Delphi v. Evans, 36 Ind., 90; Sauer v. Gillette, 75 P., 1068; Backhaus v. People, 87 Ill. App., 173; People v. Mount, 87 Ill. App., 194; West Point ex rel., 1 Mo. App., 563, 62 Mo. App., 647; San Antonio v. Micklejohn (Tex.), 33 S. W., 735; Shimer v. Inhab. of Ph. (N. J.), 33 Atl., 832; Newman v. Emporia, 32 Kan., 456 (2 P., 815); Hunt v. Lambertville, 45 N. J. L., 279; City of Girardeau v. Tougen, 30 Mo. App., 51; Martin v. City of Oskaloosa (Ia.), 102 N. W., 529.) Under the town charter, every ordinance, unless in case of emergency, must be published at least ten days before the same shall take effect. (Rev. Stat. 1899, Sec. 1454.) That provision is mandatory. Even if it should be conceded that the resolution should be construed as an ordinance, it is not shown that any emergency existed, nor is it shown that the same was ever published as required by statute. The resolution, therefore, adopted in November, 1904, prescribing the form of bond and containing other directions, was not binding upon the

mayor and the other officers it sought to direct. (O'Hare v. Town, 7 N. D., 279; Stillwater v. Mossis (Okl., 1893), 33 P., 1024; Bank v. Granada, 44 Fed., 262.)

We insist that the court is in error in holding that the resolution of November, 1904, cured all defects, if any existed theretofore in the sale of the bonds. The review of the judgment could not be prevented by the enactment of a resolution in which it is sought to compel the performance of certain acts and duties by the mayor and clerk, unless such resolution was enacted with the same formality as an ordinance, and that was not done.

It does violence to the constitution to hold that a municipality can by ordinance designate the officer to sign the certificate of legality upon the bonds. The provision in the constitution that the officer must be designated by law does not mean that a municipality can legislate upon that subject. An ordinance is not in the constitutional sense a public law. (McInerney v. Denver (Colo.), 29 Pac., 516.) The Legislature could not delegate to municipal corporations the power to determine what officer should endorse the certificate, because the constitution does not authorize it. (Anderson v. Ins. Co., 50 Am. St., 400.)

There is no County Auditor in this state, consequently legislation is required by the Legislature designating some officer who shall endorse the certificate required by the constitution for counties and political subdivisions of the state. The first State Legislature, fully recognizing that legislation was required, enacted a law for counties and school districts. (Rev. Stat. 1899, Secs. 1215 and 560. No provision was made for municipalities concerning the constitutional provision in question until the last session of the Legislature. (Ch. 94, Laws of 1905.) We insist that the Town Council could not issue any bonds until after the enactment of the recent statute. The certificate of the mayor, which was authorized by ordinance, was not sufficient to validate the bonds, and after the enactment of the statute the certificate of the mayor would simply be super-

fluous. It could not add anything to the validity of the bonds.

Bonds cannot be signed by officers whose terms have expired, nor can such bonds be signed by their successors in office and dated at a time when not in office. (Coler v. Cleburne, 131 U. S., 162; Anthony v. Jasper County, 101 U. S., 693; Leham v. City of Santiago, 83 Fed., 669.) It is clear, therefore, that the bonds cannot be issued in this action. If issued, they would be absolutely invalid, even if it should be conceded that the judgment is correct. Counsel also cited generally the following authorities: Kent v. Dana, 100 Fed., 562; Lexington v. Bank, 75 Miss., 10; Flagg v. Palmyra, 33 Mo., 440; State v. Moore, 46 Neb., 590; Moler v. Galveston, 23 Tex. Civ. App., 693; Yesler v. Seattle, 1 Wash., 308; Chickaming v. Carpenter, 106 U. S., 666.

*Metz & Sackett* and *S. T. Corn,* for defendant in error, First National Bank of Chicago.

(No additional brief was filed on behalf of the defendants in error on the petition for rehearing. But the court heard oral arguments of counsel representing both parties.)

Potter, Chief Justice.

This is a suit in mandamus to compel the issuance and delivery of certain refunding bonds of the Town of Sheridan to the relator, the First National Bank of Chicago, in accordance with its accepted bid for their purchase, and pursuant to a town ordinance providing for such bonds. The suit was brought against the town, its mayor, clerk and treasurer, and the individual members of the Town Council. The defenses interposed by the several defendants were practically the same, and are set out in the former opinion. (80 Pac., 667.) They were not personal to the officers of the town, but were based upon the proposition that no duty or obligation rested upon the town toward the relator in respect to the bonds. The main issue presented by the answer was whether a valid contract had been entered

into between the town and relator for the sale and purchase of the bonds. The trial court decided the cause in favor of the relator, and on November 15, 1904, entered judgment requiring the bonds to be issued and delivered to the relator, and to bear date January 1, 1905.

Shortly after the rendition of judgment the Town Council, over the veto of the mayor, adopted a resolution affirming the contract with the relator, and directing the issuance and delivery of the bonds to the relator bank in accordance with the contract and the judgment entered in this cause, and providing that the bonds be dated January 1, 1905, as required by the judgment. For the other particulars of that resolution we refer to the former opinion. Notwithstanding such resolution, the mayor, clerk and one member of the Council, on December 29, 1904, brought this proceeding in error to review and reverse said judgment, making the other defendants below parties here as defendants in error, together with the original plaintiff below. Upon the ground that, in consequence of the resolution aforesaid adopted subsequent to the judgment, the matter in issue had been practically settled between the interested parties, and that there had ceased to be any controversy between them, we sustained a motion to dismiss the proceeding in error. In doing so we gave our reasons at length and endeavored to show that neither the proposed bonds nor the contract for their sale to relator would be illegal, and, therefore, there was no ground for interfering with the judgment.

Within the time allowed by the rules a petition for rehearing was filed by the plaintiffs in error. By consent of parties, after the same had been argued, a rehearing was granted, in order that the motion to dismiss and the case itself might be submitted together. The motion and the cause upon the merits were thereupon submitted to the consideration of the court; the defendant in error, the bank, not waiving any point presented by its motion.

Upon reconsideration we entertain no doubt of the conclusion reached upon the previous hearing that every matter

in controversy brought into the case by the pleadings, and determined by the judgment, was put beyond further con- troversy, as against all the defendants below by the resolu- tion of the Town Council to abide by the judgment and directing its officers to perform the mandate of the court in the premises. In addition to the authorities cited in the former opinion, we cite the following: Commissioners v. Sellew, 99 U. S., 624; Little v. Bowers, 134 U. S., 547; Wash. & Idaho R. Co. v. Coeur D'Alene R. & N. Co., 160 U. S., 103; Thompson v. U. S., 103 U. S., 480. We regard it unnecessary to again generally discuss the ques- tions considered in the former opinion. But as to one or two statements contained in that opinion counsel have most courteously, but persistently, continued to urge their in- accuracy or incorrectness. We deem it advisable, therefore, to refer to them briefly at this time.

In the first place, it is contended that the provision of the town ordinance requiring the mayor to sign the certificate of legality upon the bonds was not a sufficient compliance with the constitutional provision that such a certificate shall be endorsed upon the bond of any county, or of any town- ship, or other political subdivision to be signed by the County Auditor *or other officer authorized by law.* The point maintained is that the ordinance is not a "law" within the meaning of that constitutional requirement. There is no officer known as County Auditor; and by act of the Legislature the officer to sign such certificate upon county and school district bonds had been designated, but until February, 1905, no act of the Legislature named any officer to sign the certificate upon bonds of a city or town. By an act of 1905, the city or town clerk is required to sign the same. (Laws 1905, Ch. 94, p. 145.) We said in the other opinion that the town was no doubt authorized to designate the officer to sign the certificate when the ordi- nance and resolution were adopted; that statement was made in view of the absence of any specific regulation on the subject by the Legislature; and we also said that we

knew of no reason why the Town Council might not have required the mayor to sign in addition to the signature of any other officer required to sign by statute.

We are not here called upon to decide whether the constitutional provision applies to cities and towns; but we are conceding that it does.

The statute under which the bonds in question were to be issued provides that, "The Mayor and Council of any incorporated city or town, for the purpose of redeeming, funding or refunding any indebtedness, bonded or otherwise, of such city or town, when the same can be done at a lower rate of interest, or to the profit and benefit of the city or town, may issue the negotiable coupon bonds of such city or town." Then follows certain provisions respecting the denomination, the interest, date of maturity, place of payment, and other particulars with reference to said bonds; and the last section of the chapter now known as Section 1724, Revised Statutes, 1899, provides: "The Mayor and Council of any city or town desiring to issue bonds in pursuance of this chapter shall provide by ordinance therefor, which said ordinance shall not conflict with the provisions or requirements of this chapter." Now the Legislature not having itself designated in that chapter or otherwise the officer to sign the certificate of legality upon the bonds authorized to be issued, and having expressly delegated to the corporate authorities of the town power to provide by ordinance for the issuance of such bonds, it is evident that the corporate authorities were possessed of full authority to adopt all proper and reasonable ordinances not in conflict with the statute to carry into effect the power granted, and to render the bonds which they were authorized to issue valid and obligatory; and that the provision of the ordinance requiring the mayor to sign the certificate of legality upon the bonds was not in conflict with any legislative provision or requirement. Can there be any question but that if the act authorizing the issuance of such bonds had merely provided that a city or

town might provide by ordinance therefor, without making specific provision in the act itself as to the denomination, place of payment, interest, or manner of execution, that the Council might by ordinance make all provisions necessary to the proper execution and exercise of the power conferred? The ordinance upon the subject, having been adopted pursuant to legislative authority, was a "law" within the meaning of the constitutional provision. It has been generally held that a municipal ordinance is a "law" within the meaning of the federal constitution declaring that no state shall pass any law impairing the obligation of contracts. (McQuillin Mun. Ord., Sec. 233.) In New Orleans Waterworks Co. v. Louisiana Sugar Refining Co., 125 U. S., 18, it was said by the court: "So a by-law or ordinance of a municipal corporation may be such an exercise of legislative power delegated by the Legislature to the corporation as a political sub-division of the state, having all the force of law, within the limits of the municipality, that it may properly be considered as a law, within the meaning of this article of the constitution of the United States." There can be no doubt, therefore, in our opinion, that until the enactment of the act of 1905, above referred to, a city or town issuing bonds under authority of the provisions now contained in Sections 1719 to 1724, Revised Statutes, 1899, had ample authority to provide by ordinance what officer of the municipality should sign the certificate of legality to be endorsed thereon; and that such provision is a provision of law within the sense of the section of the constitution referred to.

It appears that our previous reference to the sufficiency of the November and December, 1904, resolutions of the Town Council to provide the method of notifying the holders of the outstanding bonds to present them for payment and cancellation was a misconception of the language of those resolutions. The treasurer was thereby required to give such notification as provided by ordinance, but no such provision had been made by ordinance; and the statute

requires the notice to be given as provided by law or ordinance. It may be, therefore, that, as against an unwilling holder of the outstanding bonds, their presentation for cancellation could not have been enforced without further action on the part of the Council. But the question is immaterial. The legality of the new bonds would not depend upon the sufficiency or regularity of the notice calling in the outstanding bonds; and if such notice was irregular or insufficient, it would not affect the right or obligation of the town to issue and deliver the new bonds to the relator, upon its providing the purchase price. Moreover, it is immaterial for a further reason. The relator has secured possession of all the outstanding bonds and is willing and ready to deliver them to the town, upon receiving the new bonds to which it is entitled under its contract and judgment; and it is not questioning the sufficiency of the notice.

While we think that the conclusion arrived at in the former opinion is sustained upon principle and authority, and that this court might properly dismiss the proceeding in error for the reasons stated in that opinion, we are inclined to otherwise dispose of the case on account of events happening since the judgment, the cause itself having been submitted for our consideration as well as the motion to dismiss; and the grounds of that motion can be considered in making a disposition of the cause on its merits. We have been furnished authentic evidence of circumstances and events, since the judgment, official and otherwise, that make a modification of the judgment desirable to expedite and render convenient the carrying of the same into execution. It is, of course, true that the question whether a judgment challenged on error is erroneous or not is to be determined upon the facts disclosed by the record, and as they existed at the time of the rendition of the judgment. But it has frequently been held that in the interest of justice an appellate court may for various purposes take notice of matter occurring since the judgment. A judgment not

only valid when rendered, but free from error, considered in relation to the facts as they then existed, may even be vacated, and the cause remanded for proper proceedings, on account solely of something that transpired after it was rendered. (Ransom v. City of Pierre, 101 Fed., 665.) The rule is stated in Ridge v. Manker, 132 Fed., 599, as follows: "An appellate court may avail itself of authentic evidence outside of the record before it of matters occurring since the decree of the trial court when such course is necessary to prevent a miscarriage of justice, to avoid a useless circuity of proceeding, to preserve a jurisdiction lawfully acquired, or to protect itself from imposition or further prosecution of litigation where the controversy between the parties has been settled, or for other reasons has ceased to exist." And several cases are there cited in support of that statement of the principle. And so it would seem that if it had become impossible by reason of the delay occurring since the rendition of judgment to obey its mandate strictly, it might be properly vacated and remanded for modification. That seems to be the situation here. Or, to be more accurate, a doubt has arisen, as a result of delay occasioned by this appeal, and the refusal of the mayor and clerk to execute the bonds, as to whether they can now lawfully be executed as of the date prescribed in the judgment, owing to the fact that the terms of office of the then mayor and clerk have expired, and others have succeeded them. This doubt has been increased by the passage of the act of 1905, after the judgment, requiring the town clerk to sign the certificate of legality; whereas neither the ordinance nor judgment placed that obligation upon him. In view of that doubt, it might be necessary, in case of affirmance of the judgment as it stands, or the dismissal of the proceeding in error, for the institution of new actions to obtain a new writ modifying the previous mandate in some particulars.

Other circumstances have also arisen, not only since the judgment, but since the handing down of the previous

opinion, that change the situation in respect to some important details. We adverted in the former opinion to the deposit by the relator in a New York bank of the purchase price of the bonds, at the request of the treasurer; which sum was so deposited to facilitate the payment and cancellation of the outstanding bonds, that were all payable at such New York bank. Though the accuracy of our reference to such deposit is questioned, what we then said is substantially true. It appears that the amount of the purchase price of the bonds, viz, $75,000, was deposited on December 30, 1904, by the relator in the Chemical National Bank of New York City, together with the interest due on the outstanding bonds, the latter amount having been furnished the relator for that purpose by the town treasurer. It may be a matter of dispute whether the $75,000 was deposited to the credit of the town. So far as the question now before us is concerned, it is immaterial, and we need not determine the fact as to that matter. It is at least uncontroverted that instructions were given to the New York bank to take up the outstanding Sheridan water bonds, which were proposed to be refunded with the money so deposited, and that the deposit and directions aforesaid were made at the request of the town treasurer.

It appears that the money or the balance thereof from day to day was allowed to remain in said bank until March 4, 1905, up to which time bonds aggregating $29,500 had been presented and taken up out of said deposit. On the date last mentioned the relator directed the transfer of the balance of the $75,000 to its New York correspondent; and the manager of relator's bond department deposes that the Chemical Bank was notified that the relator would be ready at any time to take up any of the remaining bonds if presented. And it is further shown without contradiction that the relator did afterwards succeed in obtaining the remainder of the bonds, and it now holds the same.

It is contended on behalf of plaintiffs in error that the relator merely bought the outstanding bonds on its own ac-

count, and now holds them as the owner thereof. The relator maintains that it took them up as agent for the town, at the treasurer's request, and that they are now held in trust for the town. We do not propose to pass upon that disputed matter. It is unnecessary that we attempt to reconcile the several statements where they are conflicting, or that we determine the legal effect of the act of the relator in the premises, any further than it may affect the disposition of the present case. In this case and for the purposes of this case the relator is bound by its own evidence, the declarations of its officers, and its own conduct; and the town is likewise bound by the solemnly adopted resolutions of its Council. Without, therefore, deciding whether or not the conduct of the relator in the premises would render it accountable as an agent or trustee of the town in its possession of the former issue of bonds, or what the legal effect of the situation might be if properly brought into controversy, it is sufficient to say that in this case the bank acknowledges that it holds said bonds in trust for the town, and declares that it is ready to deliver them to the town upon receiving the new bonds according to its contract.

And, in that connection, it appears that at a meeting of the Town Council, October 2, 1905, by unanimous vote of the members of the Council present, but without the approval of the mayor, a resolution was adopted reciting the resolutions of November 21 and December 19, 1904, and that the First National Bank of Chicago (the relator herein) has possession of the water bonds of the town amounting to $75,000, issued August 1, 1893, for the taking up of which the refunding bonds in question were directed to be issued; and reciting further that Metz & Sackett, the attorneys for said bank, were present at said Council meeting, and represented to the Council that said bank was ready to deliver all of the aforesaid outstanding water bonds upon the execution of the refunding bonds in accordance with the mandate of the District Court, and the decision of the Supreme Court, and that it made no difference

to said bank what date the said bonds bore, so long as the date is January 1, 1905, or later, and that the bank obtains its interest according to contract. And it was thereupon resolved that the said refunding bonds be issued and delivered to said bank, in accordance with the ordinances and resolutions of the town, and the mandate of the court; that they be dated according to the previous resolution of the Council, "or as soon as may be"; and that the mayor, clerk and treasurer be and are hereby directed to proceed to issue said bonds, and sign, seal, certify and deliver the same to said bank, upon the surrender by said bank to the proper town officer of the outstanding water bonds now held by it, "in all respects in accordance with said resolution and the ordinances of the Town of Sheridan, all of which resolution and ordinances are hereby affirmed and approved, and in accordance with the laws of Wyoming. And the said officers of said town are hereby directed to do any and all acts and things necessary to a complete issuance and delivery of said $75,000 of refunding water bonds for the purposes aforesaid." It moreover appears by uncontroverted showing that at such Council meeting the said attorneys for the relator bank made the statement and proposition as set forth in the resolution aforesaid.

Should the judgment be affirmed in all respects as it stands, a possibility exists that, contrary to the reasonable expectation of the parties at the time, resulting from the delay and a failure perhaps to regularly call in the old bonds for cancellation, the town might have two sets of bonds outstanding drawing six and five per cent per annum, respectively, if the view is correct that the bank holds the old bonds as a purchaser, and not as trustee for the town, and the new bonds were to be dated January 1, 1905. But upon the representations of the parties respectively and the affidavits presented by them, the bank is not in a position here to insist upon receiving any greater interest than would have accrued upon the new bonds had they been issued, viz: five per cent per annum. And it has filed a

written consent herein that an order may be entered for its surrender of the old bonds, upon the delivery to it of the refunding bonds, and that the latter may be dated January 1, 1906, in which event it shall be paid interest on $75,000 for one year—from January 1, 1905, to January 1, 1906, at the rate of five per cent per annum by the Town of Sheridan. And by the resolution of the Council of October. 2, 1905, it was in effect consented that the new bonds might be dated later than the date fixed by the judgment of the District Court and the resolutions of November and December, 1904.

Upon the whole case, therefore, we are of opinion that the plaintiffs in error are not in a position to complain of the judgment appealed from. Under ordinary circumstances the proceeding in error might be dismissed, or the judgment affirmed. We may also, we think, modify it to make it conform to existing conditions. And the cause was submitted upon rehearing with the understanding of all parties that the court might conclude to modify the judgment if it deemed itself to have jurisdiction.

We think that in view of the present situation the bonds should be dated January 1, 1906; that the bank should receive the same interest for the past year that it would have received had the refunding bonds been issued and delivered; that it should surrender the old bonds with the unpaid coupons thereon for cancellation upon receiving the refunding bonds duly executed, and the interest as aforesaid; that the mayor and clerk should both sign the certificate of legality to conform to both the ordinance and statute; that the town and its officers who have any duty to perform in the premises should be ordered to proceed without delay to issue and deliver said refunding bonds, and upon such delivery and the payment of interest for one year on $75,000, at five per cent per annum as aforesaid, the bank should surrender the old bonds. The judgment will be modified to conform with the above suggestions, and in other respects it will be affirmed.

The modification is not the result of error in the judgment, but changed conditions, and, therefore, the plaintiffs in error are not entitled to recover their costs in this court. On the contrary, the modification arises in consequence of the delay caused by the appeal. So far as costs are concerned, the case stands as though the judgment had been affirmed or the proceeding in error dismissed. The costs in this court will, therefore, be taxed against the plaintiffs in error.

BEARD, J., and VAN ORSDEL, J., concur.