## TOWN OF SHERIDAN v. STAHL.

### (No. 571.)

MUNICIPAL CORPORATIONS—MUNICIPAL BONDS—TOWN TREASURER—
.COMMISSIONS.

1. The town treasurer held not entitled to commissions as for money received upon a sale of refunding water bonds and money paid out in the redemption of outstanding bonds, where it appeared that he never had possession of the money, but that, owing to litigation between the town and a bank claiming to have contracted with the

town for the purchase of the new bonds, the latter were not delivered until after the treasurer's term of office had expired, and in the meantime the bank aforesaid had, with its own money, acquired the old bonds, and subsequently surrendered them to the town in exchange for the refunding bonds; and that whether the holders of the old bonds delivered them to the bank believing that they were being redeemed by or for the town, or because they preferred the money in place of the bonds, was immaterial.

[Decided July 8, 1909.]                    (102 Pac. 660.)

ERROR to the District Court, Sheridan County, HON. DAVID H. CRAIG, Judge.

The facts are stated in the opinion.

*E. E. Enterline,* for plaintiff in error, argued and maintained that upon the undisputed evidence the Town Treasurer, plaintiff below, had never received the money set forth in his petition for the receiving and disbursing of which the commissions sued for were claimed; that the money was never in his actual custody nor deposited to his credit as treasurer in any bank; that he kept no account of the same; and that when his term of office expired his report of that date contained no showing that he had received any of the money upon the bonds. For that reason alone counsel contended that the Treasurer failed to show any right to the statutory commissions. It was further contended that the statute under which the commissions were claimed is in conflict with Sections 1 and 2 of Article XIV, of the Constitution, requiring that all city, state, county, town and school officers, with certain stated exceptions, shall be paid fixed and definite salaries, the same to be fixed from time to time by the Legislature; the statute aforesaid being a part of the charter of the Town of Sheridan enacted prior to the adoption of the Constitution. In support of the proposition that the statute was abrogated by the Constitution the following were cited: Mestas v. Diamond Coal & Coke Co., 12 Wyo. 415; Cooley Const. Lim. 100; People v. Hoge, 55 Cal. 612; Willis v. Sani-

tation Co., (Minn.) 50 N. W. 1110; Quinlan's Est. v.
Smye, 50 S. W. 1068; Terre Haute v. Ry. Co., 149 Ind.
174; Logan Co. v. McKinley &c. Trust Co., (Neb.) 101
N. W. 991; Anderson v. Whatcom Co., (Wash.) 45 Pac.
665; Ogden v. Chehalis Co., (Wash.) 82 Pac. 1095; Peo-
ple v. Spruance, (Cal.) 6 Pac. 831.

*Metz, Sackett & Metz,* for defendant in error, argued
and contended that the provision of the Constitution re-
quiring that certain officers should receive fixed and defi-
nite salaries is not self executing, and therefore does not
abrogate the provision of the town charter with reference
to the payment of commissions to the Treasurer for re-
ceiving and disbursing money as his official compensation,
citing Doherty v. Ransom Co., (N. Dak.) 63 N. W. 148;
Reeves v. Anderson, (Wash.) 42 Pac. 625; State ex rel.
v. Lamoureux, 3 Wyo. 731; Mestas v. Diamond Coal &
Coke Co., 12 Wyo. 414; Myers v. English, 9 Cal. 341;
Norman v. Cain, 17 Ky. L. Rep. 492; Lewis v. Lackawanna
Co., 200 Pa. St. 590; Commissioners v. Collis, 10 Phila.
430; State v. Bradford, (S. Dak) 80 N. W. 143; State v.
Gardner, 54 N. W. 606; Mercur &c. Co. v. Spry, (Utah)
52 Pac. 382; Reid v. Smoulter, 128 Pa. St. 324.

It was further contended that the action of the Chicago
bank, the purchaser of the refunding bonds, in taking up
the old bonds, was by the authority of the Town Treas-
urer, and that the bank's action amounted to a payment
and cancellation of the old bonds; that the money thus
paid by the bank constituted the consideration for the new
bonds subsequently received, wherefore it follows that the
money received for the new bonds and disbursed in pay-
ment of the old was received and disbursed during the
term of office of the Treasurer, entitling that officer to the
statutory commissions.

BEARD, JUSTICE.

The defendant in error, G. T. Stahl, brought this action
in the District Court of Sheridan County, against the
plaintiff in error, The Town of Sheridan, to recover the

sum of $1,500, which he claimed was due him from said town for commissions as Treasurer of said town on $75,000, as the proceeds of certain refunding bonds issued by said town. The cause was tried to the court without a jury and judgment rendered in favor of Stahl and against the town for $1,193.15 and costs; from which judgment the town brings the case here on error.

It is admitted that said town is and was, during the time of the transactions involved in this action, a municipal corporation organized and existing under special charter, and that Stahl was Treasurer of said town from April, 1904, to April 3, 1905. That the charter of said town provides that the Treasurer shall receive as compensation for his services, for all moneys coming into his hands, one per cent for receiving the same, except such money as shall be turned over to him by his predecessor in office, and one per cent for disbursing, except such money as shall be turned over by him to his successor in office; and also excepting certain moneys not involved in this action. The plaintiff below, Stahl, alleged in his petition that during his term of office and on December 30, 1904, while acting as such Treasurer, he duly received from the First National Bank of Chicago $75,000, as Treasurer of said town, being the purchase price of the refunding water bonds of said town sold to said bank, and that he disbursed the same in paying, taking up and redeeming the old outstanding water bonds of said town, under direction of the Board of Trustees of said town, and that he was entitled to one per cent for receiving and one per cent for disbursing the same, to-wit: the sum of $1,500. That he presented his claim duly verified to said Board of Trustees and that payment was refused. He also alleged that prior to the receipt of said money he gave bond to the town in the sum of $100,000. The defendant, The Town of Sheridan, answered, denying that plaintiff ever received or disbursed the money and alleged that the transaction between the bank and the town was an exchange of bonds. The facts as disclosed by the record are, that the Town of Sheridan

had outstanding water bonds in the sum of $75,000, drawing six per cent per annum interest, dated August 1st, 1893, and redeemable after ten years from the date of issue. That on June 15, 1903, the Trustees of said town passed an ordinance authorizing the corporate authorities of said town to issue the negotiable coupon bonds of said town in the sum of $75,000, said bonds to draw interest at the rate of five per cent per annum, payable semi-annually. Said bonds to be sold for cash, or exchanged for the outstanding bonds, but in no case should said bonds be sold for less than their par value. That said bonds should only be issued when it was definitely known where and in what amounts the same could be placed for cash, or in exchange for the outstanding bonds. That the town solicited bids for said refunding bonds, and on July 18, 1904, the First National Bank of Chicago, Illinois, through its agent, the Bank of Commerce of Sheridan, Wyoming, made the following bid: "For the $75,000.00 refunding water bonds we will pay par, you to pay $250.00 to cover all expenses." Said bid was on the same day accepted by the town. The bonds were not, however, issued at that time by reason of the Mayor and Clerk of the town refusing to sign the same; and a proceeding in mandamus was instituted by the bank on September 16, 1904, in the District Court of Sheridan County, to compel the town through its proper officers to issue and deliver to it the bonds under its contract of purchase. That case was brought to this court on error, and was finally decided January 6, 1906, by which judgment the town was required to issue and deliver the bonds. For a full statement of the facts of that case see Diefenderfer et al. v. State ex rel., 13 Wyo. 387, and same case, 14 Wyo. 302. Prior to January 1, 1905, the town gave notice to the holders of the outstanding bonds that it would redeem the same at the Chemical National Bank of N. Y., at which bank they were payable, and that interest would cease thereon on that date. On December 24, 1904, Stahl wrote the Chicago bank as follows: "Inclosed find draft for $4,500, to cover accrued interest

on the water works bonds of $75,000, which you are to take up on January 1, 1905, through the Chemical National Bank of N. Y. for me as Treasurer of the Town of Sheridan, Wyoming. I wish you to pay out this interest only on surrender of the bonds, as the bond-holders have been given legal notice of the town's intention to redeem the outstanding issue and authorize you to act for me in the redemption of these bonds as to both principal and interest. Mr. Alger informs me that you have wired him (December 21, 1904) that you would take up these bonds on January 1, 1905." On December 28, 1904, the Chicago bank wrote the Chemical National Bank, N. Y., as follows: "We enclose herewith our draft on the Equitable Trust Company for $79,500, $4,500 of which you will apply to the payment of coupons maturing January 1, 1905, on $75,000 Town of Sheridan, Wyo. water works 6% bonds, dated August 1, 1893, and $75,000 for the principal of the bonds, which you will kindly take up for our account, forwarding them to us uncancelled from day to day by registered mail. We will issue from this end. The Town Treasurer desires you to be instructed not to pay any of the interest coupons unless the same are accompanied by the bonds, as the same have been called for payment at your office on January 1, 1905. Kindly acknowledge receipt."

On February 2, 1905, the Chicago bank wrote the N. Y. bank as follows: "I have yours of the 31st and the Sheridan coupons were to be paid for account of the Town of Sheridan and should be returned to the Treasurer direct duly cancelled. The bonds were to be acquired for account of this bank and sent to us uncancelled." On March 4, 1905, the Chicago bank wrote the N. Y. bank as follows: "Some time ago we deposited with you $75,000, for the purpose of acquiring for our account $75,000 Sheridan, Wyo. water works bonds. We have up to date received from you $28,500 of these bonds and would request that you cancel our instructions and deposit the balance due us, amounting to $46,500, with the First National Bank

of New York for the credit of the First Trust & Savings Bank under advice to us." It seems there was an error in the amount as stated; the amount of bonds then taken up being $29,500 and the balance $45,500. The $45,500 was deposited by the Chemical National Bank with the First National Bank as directed by the Chicago bank. The coupons were cancelled and forwarded to the Treasurer, and the bonds uncancelled to the Chicago bank. Stahl's term of office expired April 3, 1905, and up to that time there had been presented bonds amounting to $29,500. In a number of letters from the Chemical National Bank to Stahl, it stated that it was taking up these bonds for account of the Chicago bank, and also informed him of the withdrawal of the $45,500, and that under the instructions given to it, it could not pay out the balance of the money deposited for payment of interest coupons unless accompanied by the bonds, and asked Stahl for further instruction in that respect. Stahl then instructed it to pay coupons only when presented by the Chicago bank or its N. Y. correspondent. Stahl kept no account of the $75,000 and it is not mentioned in his semi-annual report at the end of his term of office, or at any time until May 7, 1906, a month after he had presented his claim to the town, when he presented what he called a supplemental report, stating therein that he had received and disbursed this $75,000. He testified that the failure to keep an account of this money was simply a neglect on his part. After the withdrawal of the $45,500 from the Chemical National Bank the Chicago bank continued the acquisition of the bonds until it had the entire issue of $75,000, which it surrendered to the town upon receipt of the $75,000 refunding bonds and one year's interest at five per cent in accordance with the judgment in the Diefenderfer case, *supra*, 14 Wyo. 302. Stahl did not turn over to his successor in office any part of the $45,500.

Counsel have discussed several questions in their briefs and in oral argument; but the conclusion at which we have arrived renders it unnecessary to consider more than

one of them. The contention of the defendant in error is that he received and disbursed the $75,000, as Treasurer of the town and is therefore entitled under the provisions of the charter of the town to one per cent for receiving and one per cent for disbursing said money. The plaintiff in error contends that no part of the money was ever received or disbursed by the Treasurer and hence he is not entitled to any commissions. It is apparent from the amount of the judgment that the District Court concluded that the transaction constituted in law a receiving by the Treasurer of the entire sum, and a disbursing by him of $29,500 thereof, that being the amount of the bonds taken up during his term of office. In our opinion the court erred in that conclusion. Under the contract, as originally made, the Chicago bank agreed to pay to the town $75,000 upon the execution and delivery to it of the refunding bonds, but it was under no obligation to make such payment until the bonds were delivered. After the contract was entered into, the town gave notice to the bond-holders that it would redeem the bonds at the Chemical National Bank, N. Y., on January 1, 1905. Litigation having arisen, the issuing of the bonds was delayed and the town had no funds with which to redeem them in accordance with its notice. It appears that what was subsequently done by the bank was done at the request of the treasurer, but what that request was does not appear in the record. In Stahl's letter to the bank, dated December 24, 1904, he states that: "Mr. Alger informs me that you have wired him (Dec. 21, 1904) that you would take up these bonds on Jan. 1, 1905." That statement is entirely consistent with what was afterwards done by the Chicago bank. On December 28, 1904, it forwarded to the Chemical National Bank a draft for $79,500 with explicit instructions to apply $4,500 to the payment of the interest coupons and to use the balance, $75,000, in taking up the bonds for account of the bank and to forward the bonds uncancelled to it from day to day as they were acquired. The interest coupons were to be cancelled and returned to the Town Treas-

urer.  The Treasurer was fully advised as to just what
was being done and made no objections.  On March 4,
1905, and while Stahl was still in office, the Chicago bank,
without consulting him, so far as the record discloses,
withdrew the balance of the $75,000 remaining in the Chem-
ical National Bank and directed it to be deposited with the
First National Bank of New York for the credit of the
First Trust & Savings Bank, stating in its letter that such
balance was due the Chicago bank.  Subsequent to that
time the Chicago bank continued to acquire the bonds, but
in what manner does not appear; but prior to the issuance
and delivery of the refunding bonds it had acquired the
entire amount of the original issue, which, after Stahl
went out of office, it surrendered to the town upon receipt
of the refunding bonds in compliance with the final judg-
ment in the Diefenderfer case, *supra*.  It is contended
that the bond-holders could not have been compelled
to accept the money and deliver the bonds to the bank,
the town alone having the option to pay them before they
were due.  That may be conceded; but they did so, and
it is not material in this case whether they did so because
they preferred to have the money or because they believed
the bonds were being redeemed by the town.  The defend-
ant in error further insists that the manner in which the
Chicago bank held the bonds was decided by this court
in the Diefenderfer case, and that the town is bound by
that decision.  But the question here presented was not
necessary to the determination of the questions presented
in that case; and it was there stated that the court did not
propose to pass upon that disputed matter or to deter-
mine what the legal effect of the situation might be if
properly brought into controversy.  Diefenderfer case,
*supra*, 14 Wyo. 315.

The charter of the Town of Sheridan provides that the
Treasurer shall so keep his accounts as to show when
and from what sources all moneys paid to him have been
derived, and to whom and when such moneys, or any part
thereof, have been paid.  (Sec. 1473, R. S. 1899.)  The

fact that the Treasurer kept no account of this large sum of money, either as to its receipt or disbursement, and that he made no reference to it in his report as Treasurer, strongly tends to show that he did not consider, at that time, that it was constructively in his possession, and it certainly never was in his actual possession. In his semi-annual report as Treasurer covering the period from September 16, 1904, to April 3, 1905, he accounts for interest paid on the bonds, but makes no statement as to money received or paid out on account of redemption of any of the bonds, and states in his affidavit verifying his report that it represents a true and correct summary of all receipts and disbursements by him as such treasurer during the time covered by the report. It seems improbable that the Treasurer should neglect to make some entry in the books which he was required to keep of the receipt and disbursement of all moneys coming into his hands as Treasurer, and that he should fail to make any reference to it in his report if he considered the deposit by the Chicago bank with the Chemical National Bank as a payment of the money to the town. But, whether he so considered it or not, the case must be determined upon the legal effect of what was actually done, and not upon his conclusions. There is practically no dispute as to the facts, and we are of the opinion that the conclusion that must be drawn from the facts is, that the money never became a part of the funds of the town, to which the Treasurer was entitled to possession. It follows that, as the Treasurer never had possession of the money, and not being entitled to possession thereof, he is not entitled to the commissions claimed in this action. For the reasons above stated, the judgment of the District Court is reversed, and the cause remanded to that court with directions to vacate the judgment heretofore entered and to enter judgment for the defendant in that court, the Town of Sheridan, and against the plaintiff in that court, G. T. Stahl, for costs.

*Reversed.*

POTTER, C. J., and SCOTT, J., concur.