Argued March 7, affirmed April 10, rehearing denied April 24, 1923.

# CITY OF PORTLAND *v.* STATE BANK OF PORTLAND ET AL.

### (214 Pac. 813.)

**Municipal Corporations—City of Portland may Provide by Ordinance for Care, Investment, and Security of Public Funds.**

1. Under Constitution, Article XI, Section 2, Article IV, Section 1a, and Portland Charter, Sections 3, 34, the City of Portland may provide by ordinance for the care, proper investment, and security of the public funds, a matter pertaining to the public welfare within the meaning of its police power.

**Constitutional Law—State may Delegate Power to Make Ordinances having Same Force as State Statutes.**

2. Though the state legislature is alone competent to make laws, it may delegate to municipal corporations the power to make by-laws and ordinances having the force of state laws.

**Statutes—"Statutory Provisions" may be Applied to Any Express Enactment by Legislative Authority.**

3. "Statutory provisions" may be applied to any express enactment emanating from potent legislative authority.

**Municipal Corporations—City Ordinances are Effective as "Laws."**

4. Enactments of the legislative body of a city, which is a branch of the governmental power of the state, are expressions of the legislative will of its people, who may enact, amend, or repeal its charter, subject only to the Constitution and criminal laws of the state, and hence amount to laws.

**Depositaries—City Depositing Funds in Bank Pledging Securities as Required by Ordinance may Realize Thereon After Bank's Insolvency; "Required by Law."**

5. Under cl. (d), Section 6208, Or. L., as amended by act Dec. 28, 1921 (Laws Sp. Sess. of 1921, p. 45), permitting banks to qualify as depositaries for United States deposits, postal savings funds or "other public funds," by depositing the securities "required by law," a city depositing public money in a bank pledging government and municipal securities, as required by a city ordinance, may realize on such securities after the bank becomes insolvent and is

---

1. Deposit of public funds in bank as investment within statute requiring the investment of such funds, see note in 50 **L. R. A. (N. S.)** 274.

2. Power of municipality to legislate on subjects covered by state laws, see notes in 1 **L. R. A. (N. S.)** 382; 4 Ann. Cas. 2; 13 Ann. Cas. 799; Ann. Cas. 1912D, 677.

5. Deposit of public funds as preferred claim against insolvent bank, see notes in 8 Ann. Cas. 116; Ann. Cas. 1916B, 1264.

taken charge of by the superintendent of banks; "required by law" referring to any legitimate expression of the legislative will of the municipality whose funds are concerned.

**Appeal and Error—Petition for Rehearing, Based on Contention as to Matter on Which No Specification of Error was Predicated, may be Ignored.**

6.   Where no specification of error, on appeal from a decree for plaintiff was predicated on the rate of interest allowed by the court in framing its decree, which was affirmed, a petition for rehearing, based alone on a contention as to such rate, may be ignored.

**Interest—Money Deposited at 2 Per Cent Bears Interest from Demand for Payment at 6 Per Cent, Though not Reduced to Judgment.**

7.   Under act Feb. 21, 1917 (Laws of 1917, p. 781), amending Section 6028, Or. L., money deposited at 2 per cent interest bears interest at 6 per cent after it becomes due on demand for payment, though such demand has not been reduced to judgment, Section 7992, Or. L., providing that judgments for money on contracts bearing more than 6 per cent and not more than 10 per cent interest shall bear the same interest, being inapplicable.

From Multnomah: GEORGE ROSSMAN, Judge.

In Banc.

For appellants there was a brief over the name of *Messrs. Bowerman & Kavanaugh,* with an oral argument by *Mr. J. P. Kavanaugh.*

For respondent there was a brief and oral arguments by *Mr. Frank S. Grant* and *Mr. L. E. Latourette.*

AFFIRMED.

BURNETT, J.—This is a suit by the City of Portland, a municipal corporation, against the State Bank of Portland, a corporation, Frank Bramwell, Superintendent of Banks, and his deputy.

A city ordinance exists in Portland providing for the deposit of city funds in any bank in the city, with a paid-up capital stock of $25,000, on pledge of certain designated government and municipal securities. In pursuance of an application made by the defendant

bank to the city authorities and its pledge of certain United States bonds, City of Portland Improvement bonds and Portland Harbor bonds, the city deposited with the bank $110,000 of public money belonging to the city. Afterwards the bank became insolvent and the superintendent of banks took charge of the same for the purpose of liquidating its assets and paying its debts. The city now seeks to realize upon its securities by procuring an order of sale and an application of the proceeds to the payment of the deposit.

The defendants demurred to the complaint, of which the foregoing is the substance, contendng that the pleading does not state a cause of suit. The court overruled the demurrer and, as the defendants declined to plead further, entered a decree according to the prayer of the complainant and they have appealed. The specification under the demurrer is that the transaction of the deposit with the city, of the securities mentioned as a pledge, was a violation of clause (d) of Section 6208, Or. L. as amended by the act of December 28, 1921, Laws Special Session 1921, p. 45. The part of the section relied upon by the defendants reads thus:

"No state bank or banker shall give preference to any depositor or creditor by pledging the assets of such bank as security, except that any such bank or banker may qualify as depository for United States deposits, postal savings funds or other public funds, by deposit of the securities required by law and not otherwise";

It is practically conceded that the city money deposited constituted public funds within the meaning of the statute: *United States Fidelity & Guaranty Co.* v. *City of Pensacola,* 68 Fla. 357 (67 South. 87,

Ann. Cas. 1916B, 1236, and note). The crux of the controversy depends upon the construction of the phrase, "by deposit of the securities required by law." It may be taken as granted at the outset, that, under the city legislation, the deposit of such securities is required; but the defendants contend that although required by the city ordinance, they are not "required by law." They urge that the term "law," as used in the phrase, means a statute directly promulgated by the legislative power of the state as distinguished from enactments by the legislative department of any subordinate branch of the government, such as a municipal corporation.

1. It is certain that the management and care of its own funds is legitimately within the scope of the municipal power of the City of Portland. "The legal voters of every city and town are hereby granted power to enact and amend their municipal charter subject to the constitution and criminal laws of the State of Oregon." State Const., Art. XI, Section 2. "The initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district as to all local, special and municipal legislation of every character in and for their respective municipalities and districts." Constitution, Art. IV, Section 1a.

The charter under which the City of Portland operates is a recast of the act of the legislative assembly entitled "An act to incorporate the City of Portland, Multnomah County, State of Oregon, and to provide a charter therefor and to repeal all acts and parts of acts in conflict therewith," filed in the office of the Secretary of State January 23, 1903, and subsequently submitted to and adopted by the people of

Portland.   In Section 3 of that charter it is said that "The City of Portland shall be invested within its limits with authority to perform all public and private services, including those of an educational or recreative character as well as others, and with all governmental powers except such as are expressly conferred by law upon other public corporations within such limits and subject to the limitations prescribed by the constitution and laws of the state, * * .." It is also said in Section 34 of that instrument "that the specific powers granted to the city under Sections 73 and 73½ of the charter of 1903 shall continue to be exercised by the council as a part of the general grant made by the charter" among which is that "the council has power and authority subject to provisions, limitations and restrictions in this charter contained, to exercise within the limits of the City of Portland all the powers commonly known as the police power to the same extent as the State of Oregon has or could exercise said powers within said limits." It thus appears that with the sanction of the people of the state, expressed by the legislative department, the power has been conferred upon the City of Portland and rightfully assumed by it, to legislate upon such a subject as the one herein involved. It is plain that the care of the public funds and their proper investment and security pertains to the public welfare within the meaning of the police power.

2. The question is reduced then to whether the legislative action of the city may be called "a law" and whether the conditions prescribed by the city legislation for the deposit of its funds in a bank are synonymous with and within the scope of the phrase in the state statute, "required by law."

"Although the proposition that the legislature of a state is alone competent to make laws is true, yet it is also settled that it is competent for the legislature to delegate to municipal corporations the power to make by-laws and ordinances with appropriate sanctions, which, when authorized, have the force, in favor of the muncipality and against persons found thereby, of laws passed by the legislature of the state": 2 Dill Mun. Corp., 5th edition, Section 573. In *New Orleans Waterworks* v. *Louisiana Sugar Refining Co.,* 125 U. S. 18, 30 (31 L. Ed. 607, 8 Sup. Ct. 741), it is said by Mr. Justice GRAY:

"As later decisions have shown, it is not strictly and literally true, that a law of a state, in order to come within the constitutional prohibition, must be either in the form of a statute enacted by the legislature in the ordinary course of legislation, or in the form of a constitution established by the people of the state as their fundamental law.

"In *Williams* v. *Bruffy,* 96 U. S. 176, 183 (24 L. Ed. 716), it was said by Mr. Justice FIELD, delivering judgment, 'Any enactment, from whatever source originating, to which a state gives the force of law, is a statute of the state, within the meaning of the clause cited relating to the jurisdiction of this court'; (Rev. Stat. § 709); and it was therefore held that a statute of the so-called Confederate States, if enforced by one of the States as its law, was within the prohibition of the constitution.

"So a by-law or ordinance of a municipal corporation may be such an exercise of legislative power delegated by the legislature to the corporation as a political subdivision of the State, having all the force of law within the limits of the municipality, that it may properly be considered as a law, within the meaning of this article of the Constitution of the United States."

In *Morgan* v. *Bross*, 64 Or. 63 (129 Pac. 118), this court approved an instruction to a jury to the effect that a city ordinance had the same force and effect as a state statute and that a failure to comply with the requirements of municipal law was negligence *per se*. Likewise, in *Rudolph* v. *P. R. L. & P.*, 72 Or. 560 (144 Pac. 93), it was held that failure to equip a street-car with the fender prescribed by a city ordinance was a breach of duty enjoined by law: See, also, *Ex parte Lawrence*, 69 Cal. 608 (11 Pac. 217); *Ex parte Christenson*, 85 Cal. 208 (24 Pac. 747); *Ex parte Miller*, 13 Cal. App. 564 (110 Pac. 139); *City of Newport* v. *Silva*, 144 Ky. 450 (137 S. W. 546); *Diefenderfer* v. *State ex rel.*, 14 Wyo. 302 (83 Pac. 591); *Dowling* v. *City of Troy*, 1 Ala. App. 508 (56 South. 116).

3. There are three cases cited by the defendant in support of its position: *People* v. *Knapp*, 147 App. Div. 441 (132 N. Y. Supp. 747), was a case where the court was considering an indictment of a bank director under a statute imputing crime to such an officer of a moneyed corporation, if he willfully does "any act as such director, expressly forbidden by law." The court held that such phrases embodied in a statute of the kind under consideration referred to statutory law. The language evidently means that such terms used in defining a crime without special qualification have reference to the enactments of the legislative power creating the offense. *Brinkerhoff* v. *Bostwick*, 99 N. Y. 190, was an action by a stockholder against bank directors to recover damages for their mismanagement of the institution. Without discussion or citation of authorities, the court said that such phrases "are of frequent occur-

107 Or.—18

rence in the Codes and other legislative enactments and they are always used as referring to statutory provisions only." All this may be true and yet not be hostile to the conception that a statute does not necessarily mean the enactment by the general power of the state. "Statutory provisions" may well be applied to any express enactment emanating from potent legislative authority. *Wright* v. *Mayor of Macon*, 5 Ga. App. 750 (64 S. E. 807), concerned a case where a city ordinance was intended to reach a "Locker Club" kept in a room adjacent to an Elks Club where individuals stored intoxicating liquors in closets assigned for their several uses. The state had also passed a general law licensing such places for a fee of $500 per annum which the club in question had paid and in the statute it said it should not apply so as to "license or permit the keeping of any intoxicating liquors in any place prohibited by law." The court decided that the prohibitory city ordinance was not included in the term "law" as used in the proviso, assigning as a reason that such construction was necessary to avoid the conclusion that the city council, a subordinate branch of governmental authority, could make unlawful what the state had declared to be lawful. In the instant case, there is no enactment of the state in any way circumscribing the authority of municipalities to pass legislation which rises to the dignity of law respecting their local concerns and finances.

4, 5. The city is a branch of the governmental power of the state subject to the Constitution and criminal laws of the state. Under this restriction only, the people of the municipality may enact, amend or repeal its charter. The enactments of its legis-

lative body recognized from the beginning of municipal government in the state are the expressions of the legislative will of its people. They amount to laws. The state has not assumed to control merely its own funds in allowing deposits in state banks. It has permitted such moneyed institutions to qualify not only for United States deposits but also for postal savings funds and has gone further and used the comprehensive term ''other public funds.'' In granting such authority to the banks over which the state had assumed supervision, it would seem that the legislature intended that the term ''law'' should be commensurate with the general signification of the phrase ''public funds'' and should include any legislative expression of the conditions prescribed by the city in the management and deposit of its own funds. In such instances, at least so far as municipal public funds are concerned, the general legislative power of the state has not undertaken to specify what securities shall be required. While it might have passed a general law affecting all municipal corporations alike, and have required a certain kind of securities and a certain procedure, yet it has not done so and it would be an unreasonable construction of the statute to say that municipal corporations are powerless to provide for the care of their funds in consonance with what has grown to be a general public policy in this state, to deposit them in banks. A fair and reasonable interpretation of this statute, having in view the object to be obtained, namely, the judicious management of public funds, would indicate that the term ''required by law'' refers to any legitimate expression of the legislative will of the municipality whose funds are concerned. The statute has not said that the securities are to be required by

a law of the state, but has used the general term "required by law" and that means any legislative enactment emanating from proper authority. In the cases alluded to above, this court has recognized city ordinances as attaining the dignity of law. The ordinance here involved is well within the scope of the power of "municipal legislation of every character" conferred by the Constitution upon the city as a branch of the state government. It does not contravene the Constitution or any state statute. It supplements the banking law in a manner not forbidden by any state authority and is the law applicable to the case in hand.

The principal argument against the complaint was that to sustain the pleading would be to give a preference in favor of one depositor over others. On the other hand, to overturn the complaint would be to say that banks becoming the depositaries of public funds may use them to pay private claims, a conclusion not to be countenanced. Under such circumstances private depositors cannot claim the public deposit for their private benefit. The decree of the Circuit Court was correct and must be affirmed.

AFFIRMED.

---

Rehearing denied April 24, 1923.

ON PETITION FOR REHEARING.

(214 Pac. 813.)

*Messrs. Bowerman & Kavanaugh* for the petition.

*Mr. Frank S. Grant,* City Attorney, and *Mr. L. E. Latourette,* Deputy City Attorney, *contra.*

In Banc.

BURNETT, J.—By their petition for rehearing, the defendants contend for the first time that the decree of the Circuit Court, affirmed by the decision of this court herebefore rendered, was erroneous in that it allowed interest on the deposit of $110,000 at the rate of 6 per centum per annum from March 1, 1922, the date when the plaintiff demanded repayment of the money. It will be remembered that the defendants contented themselves in the Circuit Court with a general demurrer to the complaint which, being overruled, they refused further to plead; whereupon the decree was rendered for the recovery of the deposit with interest thereon at the contract rate of 2 per centum per annum from February 1, 1922, until March 1 of that year and thenceforward, at the statutory rate of 6 per centum per annum.

6. The only errors assigned on the appeal were two, one in overruling the demurrer to the complaint and the other in "entering its decree for a judgment against the State Bank of Portland in the sum of $110,000 and interest * * ." No specification of error was predicated upon the rate of interest employed by the court in framing the decree. Under these circumstances, we might well ignore the petition for rehearing, based as it is, alone on the contention about the rate of interest. Waiving this, however, the objection will be directly considered.

7. Reference is made in the petition to *Sargent* v. *American Bank & Trust Co.*, 80 Or. 16, 42 (154 Pac. 759, 156 Pac. 431), as supporting the theory of the defendants that the *6 per cent rate* cannot be applied until after decree rendered. That decision was founded upon the statute as it stood before the amendment of February 21, 1917, Laws 1917, Chapter 358, and was to the effect, so far as here involved,

that interest should not be due on any money demand until the same had ripened into a judgment or decree. The opinion turned upon a construction of Section 6028, L. O. L., as it then was, and furnished the motive for the amendment of February 21, 1917, which reads thus:

"The rate of interest in this State shall be six per centum per annum and no more, and shall be payable in the following cases, to wit:

"1. On all moneys after the same becomes due; *provided,* that open accounts shall bear interest from the date of the last item thereof.

"2. On judgments and decrees for the payment of money from the date of the entry thereof unless some other date is specified in said judgment or decree.

"3. On money received to the use of another and retained beyond a reasonable time without the owner's consent, expressed or implied.

"4. On money due upon the settlement of matured accounts from the day the balance is ascertained.

"5. On money due or to become due where there is a contract to pay interest and no rate specified; *provided, however,* that on contracts interest up to the rate of ten per centum per annum may be charged by express agreement of the parties, and no more."

In *Case* v. *McKinnis, ante,* p. 223 (213 Pac. 422), decided February 27, 1923, the plaintiff had paid in full two notes upon which McKinnis and another were jointly liable with Case. McKinnis admitted his liability to contribute but maintained that the judgment ought not to have included interest from the date of the payment by Case to the date of the rendition of the judgment. The court speaking by Mr. Justice HARRIS said:

"This contention cannot be sustained. The amount due the bank was fixed by the terms of the notes. The amounts due on each of the two notes was

definite.   The moment the plaintiff paid such definite sum due on the two notes, the defendant became liable to the plaintiff for exactly one third of that definite sum; since Section 7988, O. L. by force of the amendment of 1917 now provides that interest shall be payable 'on all moneys after the same becomes due,' the plaintiff was entitled to recover interest," citing *Sargent* v. *American Bank & Trust Co., supra,* and *Baillie* v. *Columbia Gold Mining Co.,* 86 Or. 1, 30 (166 Pac. 965, 167 Pac. 1167).

The statute as it now stands awards interest "on all moneys after the same becomes due" irrespective of whether the demand has assumed the form of a judgment or decree, or otherwise.

Section 7992, Or. L. reads thus:

"Judgments and decrees for money upon contracts bearing more than six per centum per annum interest and not exceeding ten per centum per annum shall bear the same interest borne by such contracts * * "

This Section does not affect the matter here involved because it refers only to contracts bearing more than 6 per centum interest.   The contract was for only 2 per centum until the money became due by virtue of the demand for payment on March 1, 1922, when it took on the increased statutory rate of 6 per centum.

In the instant case, the money became due when demanded on March 1, 1922, and, under sanction of the law, drew interest from that date at 6 per centum.   The Circuit Court was right in its computation and the petition for rehearing must be denied.                                    REHEARING DENIED.