[Civ. No. 2297. Third Appellate District.—May 7, 1921.]

GEARY RICH et al., Petitioners, v. W. B. CONNELLY et al., Respondents.

[1] IRRIGATION DISTRICT—FORMATION—REPORT OF STATE ENGINEER—SETTING OF HEARING NOT MANDATORY.—Under section 2 of the irrigation law, prior to recent amendment, the setting of the hearing upon the report of the state engineer, as therein provided, was not mandatory and jurisdiction to further proceed with the formation of a district was not lost, since the petition for formation constituted the basis of all proceedings and all else was evidentiary and procedural.

[2] ID.—RECOMMENDATIONS OF STATE ENGINEER—TIME OF PRESENTATION.—Under such section, the right of the board of supervisors to proceed and modify the plans of the district was not affected by the failure of the state engineer to submit additional recommendations after making an adverse report within ninety days after the submission to him of the copy of the resolution determining the sufficiency of the petition.

APPLICATION for a Writ of Prohibition to prevent formation of an irrigation district. Denied.

The facts are stated in the opinion of the court.

McWilliams & Hatfield, L. A. Hilborn and Robbins, Elkins & Van Fleet for Petitioners.

Gregory & Goodell and Arthur Lindauer for Respondents.

PLUMMER, P. J., *pro tem.*—Application for writ of prohibition. On the fourth day of October, 1920, a petition

was filed with the board of supervisors of Solano County, having for its purpose the formation of an irrigation district to be known as Suisun irrigation district. On the same day the board of supervisors of said county passed its resolution, wherein and whereby it appears that the board found and determined that the petition for the formation of said district complied in all particulars with the law, had been properly advertised, and contained the requisite number of genuine signatures. On October 6th a copy of this resolution was forwarded to the state engineer. On November 24, 1920, the state engineer reported adversely to the board of supervisors, which report was received and filed by the clerk of said board on the twenty-sixth day of said month. On December 6, 1920, being the first regular meeting of the board of supervisors following the receipt of the state engineer's report, there was a general continuance of all matters pertaining to said petition until Monday, January 3, 1921. On January 3, 1921, there was another general continuance until January 17. In the meantime, and on the thirteenth day of January, 1921, the state engineer addressed a communication to the board of supervisors containing recommendations with respect to the boundaries of said district. On the 17th of January the board of supervisors met and adopted a resolution determining to modify the plans of the district to conform to the recommendations of the state engineer contained in his communication of January 13th, set the final hearing of the petition for the formation of the district for Friday, February 4, 1921, and directed notice thereof to be published as required by law. The matter went to final hearing before the board on February 4th, and was continued to Monday, February 7th, on which latter date it was again continued until February 9th. On the ninth day of February, 1921, further proceedings were intercepted by an alternative writ of prohibition served herein. The petitioners herein contend that by reason of the fact that the board of supervisors did not at its meeting on the sixth day of December, 1920, set a time for the consideration of the adverse report submitted to it by the state engineer, jurisdiction to further proceed in the

consideration of the petition for the formation of the district was thereby lost; that the provisions of section 2 of the irrigation law of this state (Stats. 1917, p. 754), in reference to consideration of such report, are mandatory. The section, at the time the foregoing proceedings were being had, read as follows:

"Upon receiving a copy of said resolution, the state engineer shall make, or cause to be made, such preliminary investigation as may be practicable, with a view to determining the feasibility of the project proposed to be undertaken. He shall report as soon as practicable, but at all events within ninety days, in writing, on the matter to the board of supervisors from which the copy of said resolution was received, and said board of supervisors, at their next regular meeting following the receipt of said report, shall set a time for the consideration of said report, provided that such time shall not be less than one week from such regular meeting of said board of supervisors; and provided further that notice of such time shall be given by registered mail to such party as shall have been designated for that purpose by the petitioners, or by publication for at least three days in one daily newspaper published in the county in which the lands within the proposed district, or the greater part thereof, are situated. A failure to give such last-mentioned notice, however, shall not affect the validity of subsequent proceedings."

It is further provided in the same section that "if the state engineer shall report that the water supply available for the use of the proposed district is not sufficient, or that the project for any reason is considered not feasible, and such report is filed with said board of supervisors before the expiration of ninety days, the hearing of the petition shall again be continued for not more than two months, and shall then be dismissed, unless the board of supervisors shall be petitioned, in writing, by three-fourths of the holders of title or evidence of title within the proposed district."

It is also further provided that "if the board of supervisors, after receiving an adverse report from the state en-

gineer, shall decide to modify the plans as set forth in said petition, or shall be requested, in writing, by three-fourths in number of the holders of title so to do, may proceed to a final hearing of said matter."

The amended section dealing with the foregoing matters, but withheld by referendum and not in effect on the sixth day of December, 1920, omits all reference to setting a time for hearing the report of the state engineer. It does, however, contain all the requirements relating to a continuance of the hearing of the petition in the event of an adverse report.

It will be noted that section 2 of the act referred to is entirely silent on the subject of the board of supervisors making any finding or adopting any resolution determining the character of the report of the state engineer. This report, it would seem from a careful reading of the section, is for the purpose of guiding the board of supervisors and directing the final action that shall be taken. The board of supervisors apparently is not called upon or directed, even if the language of the section be held mandatory, to do anything more than set the report of the state engineer for hearing. If mandatory, the hearing must be for the protection of all property owners affected by the proposed district, and, if mandatory, then it would seem that notice of such hearing must be given to the parties interested; but the section provides that failure to give notice "shall not affect the validity of subsequent proceedings."

The section also provides that if the board of supervisors shall determine that the petitioners have complied with the requirements hereinbefore set forth, they shall cause a copy of the resolution so declaring to be forwarded to the state engineer, and shall postpone further hearing of said *petition* until a report shall be received from the state engineer. The state engineer is then given ninety days to make a preliminary investigation and report. If his report is adverse, it is the hearing of the petition that must be continued for a period not exceeding two months. [1] The foundation of the proceeding is the petition signed by the property owners of the district and filed with the board of

supervisors. It is the hearing of the petition that must be continued in the event of an adverse report, and the final proceedings on the petition are to be determined by the character of the report and the subsequent action of the property owners. It does not appear that by the adoption of the section referred to the legislature intended that the report of the state engineer should constitute anything more than a piece of evidence, conclusive in its character, by which the board of supervisors should be governed in its action, and by which the land owners of the district might be governed in their action in relation to the boundaries of the district, and the subsequent granting or denial of the petition upon which the board of supervisors were called upon to act by the property owners in the first instance. In other words, it is the petition which constitutes the basis of all the proceedings. That is the substance; all else is evidentiary and procedural. If the legislature intended that the setting of the hearing upon the report of the state engineer were mandatory, it is hardly probable that it would have provided also, in the event of a failure to give such notice, the validity of the proceedings would not be thereby affected.

[2] It is further contended that the recommendations contained in the state engineer's report bearing date January 13, 1921, were too late for consideration because not filed within ninety days after submission to him of the copy of the resolution adopted by the board on the fourth day of October previously. This, however, does not seem to affect the right of the board to proceed. The section in this particular reads as follows: "If said board shall, after receiving an adverse report from the state engineer, as aforesaid, decide to modify the plans as set forth in said petition, or shall be requested, in writing, by three-fourths in number of the holders of title or evidence of title, etc., said board shall then proceed . . . to a final hearing of the matter."

The submission or nonsubmission of additional recommendations after making an adverse report does not appear to have any bearing upon the jurisdiction of the board

of supervisors to proceed and modify the plans of the district, and there is nothing in the section which can be construed to prohibit the receiving by the board of supervisors of such recommendations in relation to the modification of the boundaries of the district as may to the state engineer seem wise or expedient.

That a hearing on the report of the state engineer is not a jurisdictional matter, that the report is evidentiary, further appears by section 3 of the same act, which upon this subject reads as follows: "Upon the final hearing of said petition or said matter, the board of supervisors shall make an order reaffirming its conclusions as to the genuineness and sufficiency of the petition and notice hereinbefore provided for, reciting that a report regarding the proposed district has been made by the state engineer, and is on file with the other records of the board, and describing the boundaries of the proposed district as defined and established by said board. Said order shall be entered in full upon the minutes of said board."

It will be noted that this is the only action required by the board of supervisors in its final hearing in relation to the report; that it be referred to as a matter of record, not that the board of supervisors must consider the same and make and enter upon its record any finding as to whether the report of the state engineer is favorable or adverse. There is no such requirement in the irrigation law. After these proceedings have all been had and the board of supervisors has finally passed upon the petition for the formation of an irrigation district, the actual question of the formation of the district must be submitted to the qualified electors thereof.

Again, when it is proposed to raise the money for the acquiring of water, water rights, building canals, reservoirs, and carrying out the purposes of the district, an affirmative vote of the land owners of the district is again required.

It will also be noted that at the time section 2 was in force, in so far as it governed the proceedings hereinbefore referred to, an affirmative vote of two-thirds of the land

owners of the district was required either to form the district or to subject it to any liabilities whatsoever. In this particular the irrigation law differs from street assessments, and many other provisions of the law by which a property owner may be called upon to pay taxes, without having the opportunity of himself deciding whether the liability shall or shall not be incurred. In the matter of forming irrigation districts and incurring liabilities, the property owner may not only protest but he also has the deciding vote.

Section 2, as it now stands amended, eliminates all provision relating to a hearing on the report of the state engineer, indicating that the legislature considered this matter not one of substance.

From what has been said, it does not seem necessary to review the decisions cited by petitioner holding that in assessment cases where the property owner has no voice, provisions of the law should be held mandatory, where in other cases they might properly be held directory. As sufficient has been stated to indicate that the petition filed by the property owners in the formation of an irrigation district is the basis of jurisdiction, and action thereon throughout the whole proceedings is the jurisdictional matter, and not either the favorable or adverse report of the state engineer further than such report may determine the final action that must be taken by the board of supervisors upon the petition, and not upon any other writing, communication, report or instrument, we conclude that the petition for a writ of prohibition herein should be denied, and it is so ordered.

Burnett, J., and Hart, J., concurred.