# PADLOCK RANCH, INC. v. WASHAKIE NEEDLES IRRIGATION DISTRICT

(No. 1985; September 21, 1936; 60 Pac. (2d) 819)

(Rehearing denied October 20, 1936, 61 Pac. (2d) 410)

For the appellant there was a brief and the cause was argued orally by *William E. Mullen* of Cheyenne, Wyoming, and *Arthur Ponsford* of Denver, Colorado.

For the respondent, there was a brief and oral arguments by *C. W. Axtell* of Thermopolis and *E. J. Goppert* of Cody.

ILSLEY, District Judge.

This is a proceeding which involves the organization of an irrigation district under Article 7, Chapter 122, of the Wyoming Revised Statutes, 1931. The facts in the case are practically undisputed. The record shows that on December 19, 1933, petitions, together with a preliminary engineering report for the creation of the "Owl Creek Irrigation District," were filed in the district court for Hot Springs County, under Civil Case Docket No. 2067. Accompanying the petitions was a signed report by Howard F. Bell, a registered engineer, under the date of December 9, 1933, and there was also a certificate by Edwin B. Burritt, State Engineer, under the date of December 12, 1933, by which he gives his approval for the purposes of organization and operation.

The original "Owl Creek Irrigation District" proceeding remained in the clerk of court's office in *status quo* until September 17, 1935, in Case No. 2067. However, during the interim and about March, 1935, another irrigation district, under the same name—

"Owl Creek Irrigation District"—was created by court order, embracing approximately 3,000 acres of land. This 3,000 acres of land was included in the irrigation district first named "Owl Creek" and afterwards, by court order, named "Washakie Needles Irrigation District." That was Case No. 2141. That district was created, on a separate petition, on March 9, 1935. On the 17th of September, 1935, C. W. Axtell, an attorney for the petitioners and respondents in this case, filed and presented a motion in the district court, stating nothing had been done as respects the original petition in No. 2067 since its filing and that another "Owl Creek Irrigation District," containing 3,000 acres, had been created in the meantime, and requesting from the district court an order to withdraw the petitions then on file in No. 2067 and refile them in the district court of Hot Springs County in case No. 2187, with the proposed name changed from "Owl Creek" to "Washakie Needles Irrigation District," and requesting further proceedings be taken in the district court, as provided for by law. This was accordingly done by an order of the district court and the petitions and accompanying papers, including the engineering report and certificate of the state engineer giving his approval, were withdrawn from civil case No. 2067, and the name, "Washakie Needles" substituted for the name "Owl Creek" in the petitions; and, in the accompanying engineer's report and the certificate of the state engineer, the name "Owl Creek" is scratched through with a pen, and the name "Washakie Needles" is written over the scratched-out words. Thereupon, all of the petitions and instruments of record were refiled in the district court of Hot Springs County under the date of September 18, 1935 in a new civil case, No. 2187.

An order of the district court was made and entered in the new file, case numbered 2187, on September 19, 1935, fixing October 26, 1935, at 10 o'clock a. m. as the

date for hearing on the petitions and requiring the clerk of the district court to give the notice required for the formation of an irrigation district, as provided for by Sections 122-703 and 122-704 of the Revised Statutes of Wyoming, 1931. Thereupon, such notice was duly published and served by the sheriff; other petitions were filed and various objections were filed to the creation of the district. Appellant filed a petition to strike its name from the original petition and also filed a protest and objection by leave of the court.

It appears that the Washakie Needles Irrigation Project was approved as to feasibility and water sufficiency by the state engineer on November 14, 1935. Mr. Bell's preliminary engineer's report is dated December 9, 1933. Admittedly, the lands, totalling approximately 3,000 acres and making up the newly-created "Owl Creek Irrigation District," under date of March, 1935, were also included in the proposed "Washakie Needles Irrigation District."

At the time set for the hearing upon the petitions, the appellant-objector appeared, other objectors appeared, and many of the petitioners were present. Evidence was submitted both for and against the creation of the irrigation district. At the hearing, C. W. Axtell, attorney for the petitioners, made a statement "That an arrangement had been made between the petitioners and appellant, whereby it was agreed that the appellant's land should be excluded." A number of the objectors, represented by C. B. Ingle, their attorney, protested such an arrangement, and it appearing that there was some question as to who should represent the appellant—Padlock Ranch, Incorporated—as its attorney, the court set a new date for hearing in the matter in order to give the Padlock Ranch, Incorporated, the appellant, an opportunity to procure other counsel, if it was deemed necessary.

At the new date set for hearing, the court, after hearing all of the evidence, found in favor of the creating of the irrigation district, divided the same into three commissioner districts, and appointed commissioners and fixed their bonds.

The appellant—Padlock Ranch, Incorporated—is the only one of those appearing in the proceedings that has appealed, and, therefore, the proceeding, as respects all others, is final by the trial court order establishing the district, unless, perchance, there is want of jurisdiction to establish the district.

1. The petitioners and respondents have filed a motion herein to dismiss the appeal for the reason that the notice of appeal, given by the appellant under date of December 3, 1935 and filed in the trial court December 4, 1935, was given before the final order was entered in the cause, and that no notice of appeal was filed after the entry upon the court records of the final order. It clearly appears that through inadvertence and mistake, appellant's lands were not included in the order under date of December 3, 1935. All of the parties proceeded upon the theory that the lands were included. It was an honest mistake and a technical one, and when the trial judge made a new order correcting the mistake, he did nothing more than make an order *nunc pro tunc,* correcting an omission. No one was deceived by it. In fact, everyone connected with the case supposed that the lands omitted were really included in the order as originally made. The last order entered is merely an amendment of the original order.

It has been well said: "Reason and justice, as well as the authorities, sustain our conclusion. The defect resulted from mere inadvertence and was purely technical. Until a hearing on the writ of error, both parties proceeded under the impression that the judgment was technically, as well as substantially, final. Discov-

ery of the defect then was a matter of surprise to them, as no doubt it was to the trial court on the application for amendment. Correction thereof by amendment saves time and expense, and facilitates disposition of business without working injury in any respect." Schoonover v. Baltimore Railway Co., 69 W. Va. 560, 73 S. E. 266, Ann. Cas. 1913 B 964. To the same effect is Snyder v. James, 2 Wyo. 262. Compare Conradt v. Lepper, 13 Wyo. 99. For reasons stated, we feel that the motion to dismiss the appeal should be denied.

2. The appellant claims as error the permitting of the files and documents to be withdrawn and the changing of the name of the irrigation district from "Owl Creek" to "Washakie Needles Irrigation District." As we view it, the authorization to withdraw the files in the proceeding of the district first attempted to. be organized under the name "Owl Creek Irrigation District" and refiled under a new docket number and a new district name would not be material. If the papers remained intact in the old file, the court could have allowed an amendment as to the name. See Section 122-701, Wyo. Rev. Stat. 1931:

"No petition having as many signers as are required by this Section shall be declared void, but the court may at any time permit the petition to be amended in form and substance to conform to the facts, if the facts justify the organization of an irrigation district * * *."

What was done was to allow the papers to be withdrawn and refiled together with a new name given the district. The proceedings were the same and continuous and should be considered as having taken place in one and the same case. We are unable to see how anyone can be materially injured in any way by the mere change of name.

Counsel for appellants claim in this connection that

in view of the fact that no notice of the application for the change of name was given, and the notice ordered by the court fails to contain a statement that such name was changed, the published notice was misleading, and did not give the court jurisdiction. We think, however, that the court obtained jurisdiction of the subject matter by the filing of the petition, with a sufficient number of signers. North Laramie Land Company v. Hoffman, 30 Wyo. 238, 260, 219 Pac. 561; Masters v. McHolland, 12 Kans. 17. It obtained jurisdiction of the parties by the notice given to the various parties pursuant to the order of the court. That notice, as appears from the record, while containing the new name of the district, also contains a description of the various properties included in the district. It, therefore, conveyed information to the various parties that their lands were included in the district. The notice, accordingly, and the change of the name, were not of such character as to be held such as would deprive the court of jurisdiction. Nor can these matters be held to be so irregular as to defeat the proceedings, and requiring a reversal of the case on that ground. All parties had an opportunity of appearing in court and making their objections. The appellants actually appeared, and appeared generally by filing a protest and objections seeking dismissal of the proceedings. 4 C. J. 1338. The court thereby acquired jurisdiction over the person of the defendants, and any mere defect in the notice would be immaterial. And appellants cannot, of course, complain of matters affecting other parties only.

3. Appellant claims that the court had no jurisdiction of the case by reason of the fact that no notice of the filing of the petition was given within the time required by statute. Section 122-703 provides that "on such petition being filed, the court or judge thereof shall make an order fixing the time and place of the

hearing thereof and ordering notice." Counsel for appellant contend that the "on" means "forthwith," and that when this was not complied with, the court was without jurisdiction to give the notice thereafter. The notice herein was given immediately after the second filing of the petition, that is to say, after the petition was withdrawn from Case No. 2067 and filed in Case No. 2187. The refiling of the petition, however, was immaterial, as heretofore stated; did not alter the situation, and did not make the petition a new petition except in so far as permissible amendments were made, and the filing must be considered as dated back to the time when it was filed in Case No. 2067. It does not follow, however, that the court thereby was deprived of jurisdiction in the case. Our attention is called to Samuelson v. Tribune Publishing Company, 41 Wyo. 487, 287 Pac. 83, wherein it was held that the term "thereupon" as used in the law requiring the record on appeal to be filed with the clerk of this court, means "forthwith." We do not think the case is in point. In the first place, the situations are not at all alike. The statute on appeals contemplates a speedy determination of the controversy, and unnecessary delay should, therefore, not be countenanced. We should, on the other hand, not be too strict in construing the statutes in reference to the organization of an irrigation district because of the more or less complicated nature of the proceedings and the commencement thereof. 67 C. J. 1300. In the second place, we did not hold in the Samuelson case that the failure to file a record on appeal in the court "forthwith" was jurisdictional. On the contrary, this court, by rule, fixed sixty days in which that might be done after the filing of the record in the trial court. We think, accordingly, that the failure to give notice in this case "forthwith" or within a reasonable time was not jurisdictional. Masters v. Mc-Holland, 12 Kans. 17; Lee v. Cook, et al., 1 Wyo. 417;

Rich, et al. v. Connelly, 52 Cal. App. 556, 199 Pac. 540, 541; Bliss v. Hamilton, 171 Cal. 123, 152 Pac. 303. But, of course, the long delay in giving notice in this case must be taken into consideration in determining whether or not prejudice resulted to appellants.

4. It is also argued, in effect, that since the engineer's report was completed in 1933, it was of no value, in view of the changed conditions, in connection with the filing of the petition in 1933, and the contention appears to be that this affects the jurisdiction of the court. But a report was actually attached to the petition as filed in 1935. It is true, that it was substantially two years old, and hence was not of great value, if conditions were changed. But any report of an engineer is apt to be made some time before the petition is filed, and perhaps in some cases even before a petition is circulated. Hence the date of the making of the report cannot, ordinarily, be considered jurisdictional, unless, perchance, the time intervening between the making of the report, and the filing of the petition, is so great that the court must say that it is equivalent to no report at all. We do not think that we can go to that extent in this case. The effect of the report herein will be considered later on in this opinion.

5. It appears that a certain part of the petition in this case, as filed in Case No. 2067, was circulated for signatures, with a letter attached thereto reading as follows:

"To whom it may concern.

It is understood and agreed that if the estimated cost of the Owl Creek Irrigation project exceeds an average of $22 per acre to the farmer, we will not have the district created.

(signed) Farmer's Committee, by
I. N. Harvey, Vice-Pres."

It is claimed that the signatures obtained to that part of the petition which had this latter attached were

conditional signatures, and deprived the court of jurisdiction. It would seem, however, that the letter constitutes but a representation. Harney Valley Irr. Dist. v. Weittenhiller, 101 Or. 1, 198 Pac. 1093. It is not shown that it came to the notice of anyone, or that any one whatever who signed the petition relied on the condition as to the cost. The parties who signed that part of the petition to which the letter was attached have not complained. We think that the objection of appellant on this point should be overruled. This, then, disposes of all contentions as to the jurisdiction of the court, and we cannot hold that any essentials were lacking therein.

6. It is also contended that the court should have excluded the lands of appellants from the district, because of the fact that it will not be benefitted. The point is not so clear that we can, under the evidence, say that this is true. We might say in this connection that counsel for the respondents argue that even if appellants are not benefitted directly, its lands can, nevertheless, be assessed for indirect benefits. Perhaps we should not entirely overlook that argument. There are some cases which indicate the contention to be true. Assessments for indirect benefit are frequently made in cities. It is readily seen that proximity to a paved street, and the construction of a sewer which benefits the whole community, may confer an indirect benefit. It is harder to see, unless for some peculiar reason, which does not appear in the record, how a farm can be benefitted indirectly—that is to say, if it does not and cannot use any of the water furnished by an irrigation district. We should not, however, determine that matter now. It can best be determined later, after the commissioners make their report, when all the facts can be shown, and under the record as it now stands the objection should, we think, be overruled.

7. The appellant complains that another irrigation

district (the 3,000 acre Owl Creek District) was created within the boundaries of the Washakie Needles District, which creation adversely affects its rights as disclosed by the facts in the record. This presents a serious question. The newly-created "Owl Creek Irrigation District" is included in the "Washakie Needles Irrigation District." Mr. I. N. Harvey testifies on page 257 to page 267 of the record that the "Washakie Needles Irrigation District's" name was changed after the formation of the "Owl Creek District." If no one was injured or prejudiced in any way, or the project is feasible notwithstanding that, this point would not be well taken, but one of the necessary elements in a petition for the organization of an irrigation district, accompanying the petition shall be a preliminary engineering report on the feasibility of the project, including a report on the sufficiency of its water supply, the approximate area of irrigable land within the district, including an estimate of the cost of construction, all of which shall be approved by the state engineer. It appears in the record that the state engineer, on November 14, 1935, filed a certificate as follows:

"I hereby approve the report of Howard Bell, engineer, on the feasibility of the project and sufficiency of the water supply, the approximate area of irrigable land within the district, and estimate of the cost of construction as applied to the lands in Washakie Needles Irrigation District, as said lands now appear in the petition for said District in the District Court of Hot Springs County, Wyoming."

We must remember, however, that the report of the engineer, Mr. Bell, is dated December 9, 1933, and there does not appear in the record any further or additional report filed by him subsequent to that time, so that the certificate of approval by the State Engineer necessarily refers to the date of the report of Mr. Bell. Neither the certificate of the state engineer, therefore, nor the certificate of Bell, shows, in the face of the

changed conditions, that the project is feasible. The record is silent as to the effect of carving out a new district (Owl Creek) of 3,000 acres of land from the Washakie Needles District upon the feasibility and cost of construction in this, the "Washakie Needles" proceedings, and unless it appears in this proceeding whether or not the creation of the new "Owl Creek Irrigation District," containing some 3,000 acres of land within the boundaries of the "Washakie Needles Irrigation District," without a new engineer's report and without testimony and a finding by the court showing just what effect the formation of the new district would have in this proceeding, the appellants are necessarily prejudiced herein.

The cost of the project is, of course, one of the important facts to determine whether or not a project is feasible. And it is the duty of the court to determine such feasibility. We cannot find in the statutes that the determination of that fact can be made later in the proceedings of the district, and should, accordingly, be made at this time. It is true that by subsequent changes made in the boundaries, etc., it is possible that the whole project be ultimately defeated; still we think that the statute contemplates that the feasibility shall fairly and reasonably appear at the time of the organization of the district, before too much additional expense and labor be incurred. Since the engineer's report cannot be relied on, in view of the changed conditions, the point must necessarily be determined by the court by evidence introduced in the case which will be sufficient on that point. The statute provides that the court must be satisfied that "the proposed work can be more cheaply done in a single district than otherwise." Sec. 122-702. The question in this case is not whether one district may be superimposed upon another, but whether the separate district of 3,000 acres should be included in the district proposed herein

at all. It may be that by including it within the present proposed district, the burden upon the landholders therein would be so great as to be unbearable, and the lands therein would, therefore, at least in the long run, be excluded from the proposed district here. Furthermore, it is not shown what amount of water supply that district has or expects to have from sources other than those of the proposed district here. If it has an ample water supply, or a large water supply already, the benefits to be assessed against the lands in that district would be small, or none at all, and the cost against the lands in the proposed district here would, of course, be increased proportionately. None of these matters were gone into or considered by the court.

The testimony shows that the irrigable lands in the proposed district will not exceed 15,000 acres. The estimated cost is $360,000, and a "little more." How much more does not appear. If all of the 15,000 acres were included and all equally assessable, the cost would be $24.00 per acre. But it does not appear how much of the land is equally assessable, and how much is assessable but for a small portion of the cost. That should be determined, at least in some reasonable manner. If the 3,000 acres of the district already created were excluded, and the acreage decreased to 12,000 acres, then the cost of the project would be at least $30.00 per acre. Moreover, it appears from the record that the Federal Government proposes to give the district the sum of approximately $200,000. It is common knowledge, however, that because of the limitations connected with such gifts, the value of the gift is not at par with the like amount raised by private enterprise. The testimony in the case should show what bearing, if any, that has on the cost herein. In other words, it is just, right and proper that each and all of the landowners of the district be reasonably well apprised of the actual cost, and the actual feasibility of

the project herein, and that the court determine these points. From what has been said herein, it is clear that the evidence heretofore produced on these points is insufficient. The burden of proof in that regard is on the respondents. The cause is, accordingly, remanded to the district court for the purpose of taking additional testimony on these points and for further proceedings not inconsistent herewith.

*Remanded.*

BLUME and RINER, JJ., concur.

### ON PETITION FOR REHEARING

BLUME, Justice.

Appellant has filed a petition for rehearing herein. It assigns as error that we held that the trial court obtained jurisdiction of the subject matter by the filing of the petition with a sufficient number of signers. We cited, in support of that statement, the case of North Laramie Land Co. v. Hoffman, 30 Wyo. 238, 260, 219 Pac. 561, affirmed in 268 U. S. 276, 69 L. Ed. 953, 45 Sup. Ct. 491. We fail to see the force of appellant's contention. Counsel argue that the proceeding should not be deemed to be "commenced" until after the giving of notice, just as in the case of an appeal. A concession of that point would not be important. Under our statute the filing of the petition gives the court jurisdiction to order a notice to be given. That evidently refers to jurisdiction of the subject matter, in the particular case, since jurisdiction over the parties is acquired otherwise. Counsel say that in the North Laramie Land Company case—a case for the establishment of a road—we stated that "it is a universal rule that where a petition is required to be filed in a cause, the filing of one that is sufficient *legal notice of the proceedings being given* confers jurisdiction and sets in motion the power of the tribunal to hear and determine the cause." And counsel thinks that the words

underscored distinguishes this case from that. Not at all. The statute in relation to the establishment of a road requires notice *previous* to the filing of the petition; yet we stated in the foregoing case that in a proceeding like this, which is a proceeding in rem, notice need not be given at the commencement of the proceeding. The statute in this case requires that the notice be given subsequent to the filing of the petition. We have defined jurisdiction as the power to render a particular judgment. State v. District Court, 33 Wyo. 281, 289, 238 Pac. 545. A number of things are necessary to confer it in complete form. One is that the tribunal must have general power over matters of the kind involved in a particular case. That exists in the case at bar. The particular proceeding must, further, be initiated in some sufficient manner. That was done by the petition filed in this case, thus giving the court jurisdiction over the subject-matter in the particular case. To give the tribunal the power to hear and determine the cause, as stated in the North Laramie Land Co. case, something more, of course, is essential, namely, notice to the parties interested. That notice confers jurisdiction over the parties, and if it is insufficient, but they make a general appearance, the insufficiency is waived, as held in our original opinion. But merely because such notice, or appearance, is necessary to hear and determine the cause by no means indicates that the court did not have jurisdiction of the subject matter in the particular cause. In fact, as already indicated, our statute, by providing that the court shall order the notice to be given after the filing of the petition, necessarily presupposes, and seems to specially provide, that the court acquires jurisdiction of the subject matter in the particular case before notice is given.

2. We stated above that a proceeding of the kind involved herein must be initiated in some sufficient

manner. There can be no doubt that this was done when the petition was filed in Cause No. 2067. The real complaint of counsel is, or must be construed to be, that the court thereafter lost the jurisdiction over the subject matter which it had previously acquired—lost it by reason of the fact that no notice was immediately given; because the petition was amended as to the name of the district; because the engineer's report became inadequate and because another irrigation district, within the boundaries of the Washakie Needles Irrigation district, was organized in the meantime. Nothing which counsel have said in the argument for a rehearing has convinced us that the trial court lost its jurisdiction once rightly acquired. As a general rule jurisdiction once acquired is not defeated by subsequent events. 15 C. J. 822-823. The matters complained of at most made the proceedings irregular. In that event the appellant would be entitled to relief in so far as prejudiced, but no further. We deemed the proceedings irregular in some respects, and therefore ordered a new trial in connection with those matters by reason of which the appellant was prejudiced.

3. Counsel further complain that we did not hold that appellant's land should have been excluded from the district. Our attention is called to the fact that opposing counsel are not adverse to such exclusion. If the opposing party is willing to have the lands of appellant excluded, that can be done by proceedings in the trial court, and all controversy can thereby ] ended. But that is not a ground for rehearing here] There was some evidence that at least some of app, lant's lands would be benefitted, and if that is so, v obviously, should not finally determine the question the exclusion of appellant's land from the district nc since that can be determined much better later. If, o. course, the court should, upon the further hearing of the case which we have ordered, determine that the

project is not feasible so far as appellant is concerned, that itself would settle the point, nor is there anything in what we have heretofore said to hinder the trial court in such further hearing from reversing the order heretofore made as to the inclusion of appellant's land in the district. Appellant's counsel, however, seem to think that unless we review the order of inclusion now, the opposing party might claim the matter to be res judicata. It is apparent what we though of that point when we declined to finally determine the matter at this time. "A judgment cannot be set up in bar of a subsequent action unless it was a final judgment on the merits, adjudicating the rights in litigation in a conclusive and definite manner. In order that a judgment should be final within the meaning of the rule stated it must be such as puts an end to the particular litigation or definitely puts the case out of court." 34 C. J. 770. Clearly these principles are applicable here. The point in question has been specially reserved for future decision; it has not been adjudicated, but has been specially directed to be adjudicated in the future. In such event no plea of res judicata would avail, until that has been done.

4. Complaint is made in a supplemental petition for rehearing that our order heretofore made is indefinite, and that we should have made a definite order of reversal of the case and sent it back for a new trial. That point, however, is merely a matter of expediency. Unless the court, upon the further hearing of the case, should find that the project is feasible, so far as appellant is concerned, from the standpoint of cost, benefits to appellant, proportionate or absolute, and all other considerations, including the fact of the organization of a 3000-acre district mentioned in the original opinion, the court must necessarily vacate its order heretofore made in so far as the inclusion of the land of appellant in the district is concerned. It is suggested

that this would, necessarily, affect all other parties. Perhaps so, indirectly. But other parties are not before us, and we fail to see how this court would have power to do anything further than make an order which affects the rights of the parties before us. Whether, if the project is not feasible so far as appellant is concerned, it is also not feasible so far as other parties are concerned, is a point not now before us, and we express no opinion thereon. The statute seems to contemplate that one does not necessarily follow from the other, for it has been given power to exclude lands at the time of the hearing on the establishment of the district. If, however, the court should conclude that the project is not feasible as to any of the land-owners, some means can doubtless be found to abandon it.

The petition and supplemental petition for a rehearing are, accordingly, denied. The order heretofore entered upon the journal will, however, be amended, so as to make reference to this opinion as well as the original opinion.

*Rehearing denied.*

RINER, Justice, and ILSLEY, District Judge, concur.